IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID ROBERT BENTZ, # S-03210, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-cv-1259-JPG |
| | ) |
| COWAN, MICHAEL ATCHINSON, | ) |
| T. HOWELL, and UNKNOWN PARTIES | ) |
| (Jane Doe #1, John Does #2-10), | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff is currently incarcerated at Menard Correctional Center ("Menard"), where he is serving a life sentence for murder. He has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was subjected to excessive force by two of the Defendants, who then refused to help him obtain medical attention for his injuries. Other Defendants failed to intervene to stop the improper use of force.

**The Complaint**

On August 26, 2012, a number of correctional officers in the "Orange Crush" team conducted a shakedown of Plaintiff's housing unit (Doc. 1, p. 3). Plaintiff, his cellmate, and others were extracted from their cells, handcuffed, and taken to the prison chapel while their cells were searched. While Defendants Howell and John Doe #2 were taking Plaintiff out of his cell, Defendant Howell started punching Plaintiff in the back of the head. He continued this punching as they walked down four flights of stairs. Plaintiff was handcuffed behind his back this entire time.

Plaintiff was made to stand in line with other inmates. After Defendant Howell said something to Defendant John Doe #3, this unknown officer grabbed Plaintiff by his shirt, yanked him out of the line, threw him to the ground, and hit Plaintiff in the back of the neck. Plaintiff's head struck the pavement. John Doe Defendants #4 and #5 dragged Plaintiff to the chapel and made him kneel with his head down, where other John Does kicked him (Doc. 1, p. 4). Plaintiff asserts that these events took place "in the presence and/or under the supervising eyes of" Defendants Atchinson and John Does #2-#10, and these Defendants failed to intervene or stop the abuse. *Id*.

Plaintiff suffered swelling on the back of his head, a knot on his forehead, and was in severe pain. He feared he might have a concussion, and asked Defendants Howell and John Doe #3 to get him medical help, but they refused.

After Plaintiff was returned to his cell, he filed several grievances over these events, which were never answered. In response to a letter he wrote to Internal Affairs, he was called in to meet with Defendant Jane Doe #1. She told him she would investigate the matter, but failed to do so, and later told him she would not take any action (Doc. 1, pp. 4-5). Almost one year later, Plaintiff met with Defendant Cowan (of Internal Affairs) about another matter. In response to Plaintiff's inquiry about the status of any investigation into his complaint over the events described above, Defendant Cowan said they "do not investigate staff on inmate assaults" (Doc. 1, p. 5).

Plaintiff asserts claims for cruel and unusual punishment, deliberate indifference to medical needs, civil conspiracy to cover up the excessive force incident and to deny him medical care, and state law claims for negligence and assault/battery. He seeks damages, and declaratory and injunctive relief (Doc. 1, pp. 7-8).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action that shall receive further review:

**Count 1:** Eighth Amendment claim against Defendants Howell, John Doe #3, and the John Doe Defendants who kicked Plaintiff, for subjecting Plaintiff to excessive force;

**Count 2:** Eighth Amendment claim against Defendants Atchinson and John Does #2 and #4 - #10 for being physically present but failing to intervene or protect Plaintiff from the use of excessive force by Defendants Howell, John Doe #3, and the other John Doe Defendants;

**Count 3:** Eighth Amendment claim for deliberate indifference to Plaintiff's medical needs due to his injuries, against Defendants Howell and John Doe #3 for refusing Plaintiff's requests for medical care;

**Count 4:** State law claim for negligence[1] against Defendants Howell and John Doe #3, for failure to obtain medical care for Plaintiff after they injured him;

**Count 5:** State law claim for assault and battery against Defendants Howell, John Doe #3, and the John Doe Defendants who kicked Plaintiff.

**Claims and Defendants to be Dismissed**

Plaintiff's allegations that Defendants engaged in a civil conspiracy **(Count 6),** and that Defendants Cowan and Jane Doe #1 failed to investigate his complaints **(Count 7)** do not state a

---

[1] In Illinois, in order to state a claim for negligence, a complaint must allege facts to establish that the defendant owed the plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross,* 879 N.E.2d 278 (2007)).

claim upon which relief may be granted. These claims and Defendants Cowan and Jane Doe #1 shall be dismissed from the action.

**Count 6:** Plaintiff alleges that Defendants conspired together to deny him medical treatment and to cover up the excessive force incident (Doc. 1, p. 5). However, conspiracy is not an independent basis of liability in §1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). An alleged conspiracy to deny medical treatment is duplicative of Counts 3 and 4 above that shall receive further review. Plaintiff shall also be allowed to proceed on his excessive force claims, but a conspiracy to "cover up" those acts after the fact does not amount to a constitutional violation in and of itself.

Further, under the intracorporate conspiracy doctrine, a claim for conspiracy to violate an individual's civil rights (which arises under 42 U.S.C. § 1985) "cannot exist solely between members of the same entity." *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999). All of the Defendants are members (employees or agents) of the same entity, the Illinois Department of Corrections, and it appears that they were all working in the IDOC's interest. Therefore, the Defendants cannot be sued under § 1985 conspiracy. *See id. See also Wright v. Ill. Dep't Of Children and Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994).[2] Accordingly, the conspiracy claims in Count 6 shall be dismissed with prejudice.

**Count 7:** Plaintiff asserts that Defendants Jane Doe #1 and Cowan should have investigated the use of excessive force against him, but failed to do so. This omission does not violate any constitutional right.

The failure of prison officials to properly address a prisoner's grievances or complaints

---

[2] While *Wright* focused on corporate managers, nothing in its reasoning precludes application of this doctrine to supervisors and subordinates in a government entity, as long as all are working in the entity's interest. *Id.* at 633.

will not support a constitutional claim.  "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).  The Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution.  *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

Similarly, there is no constitutional right to have officials conduct an internal investigation of a prisoner's complaints.  Plaintiff's factual allegations show that Defendants Cowan and Jane Doe #1 were not present during the excessive force incident, nor did they deny his requests for medical care after he was injured.   Because they were not personally involved in the alleged deprivations of Plaintiff's constitutional rights, they cannot be held liable in a civil rights action.  *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001).

**Pending Motions**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

Plaintiff's motion for contempt of court order (Doc. 9) claims that the Trust Fund Officer at Menard has made payments toward his federal court filing fees that exceeded the amount he should have been assessed under the orders granting him leave to proceed *in forma pauperis* ("IFP") in these cases.  Specifically, he states that in December 2013, payments totaling $20.00 were deducted from his inmate trust fund account and sent to the Clerks of Court for this district (two $2.00 payments), the Central District ($2.00 and $10.00), and the Northern District ($4.00) (Doc. 9, p. 2).  Plaintiff has one prior case pending in this District (*Bentz v. Bledsol, et al.*, Case No. 13-573-JPG-DGW), and two cases each pending in the Central and Northern Districts (Doc.

1, p. 2). Plaintiff claims that he had income of $50.00 in the month of November 2013, and complains that the total $20.00 assessment for court fees improperly exceeded 20% of his income. *Id*. Under this Court's order granting Plaintiff's motion to proceed IFP, he must "make monthly payments of 20% of the preceding month's income credited to Plaintiff's prison trust fund account (including all deposits to the inmate account from any source) until the $350.00 filing fee is paid in full" (Doc. 8); *see also* 28 U.S.C. § 1915(b)(2).

In fact, Plaintiff's trust fund statement shows that he had a total income of $60.00 for November 2013 – a $50.00 payment from a family member plus the $10.00 payroll from Plaintiff's prison job (Doc. 9, p. 3). It is true that 20% of $60.00 ($12.00) is less than the $20.00 in court fees that was deducted from Plaintiff's account. However, it appears that both Plaintiff and the Trust Fund Officer at Menard have misapprehended the manner in which court fees are to be deducted and paid from a prisoner's account when he owes multiple fees for several different lawsuits.

The Seventh Circuit has instructed that "the fees for filing the complaint and appeal cumulate. Otherwise a prisoner could file multiple suits for the price of one . . . ." *Newlin v. Helman,* 123 F.3d 429, 436 (7th Cir. 1997), *overruled in part on other grounds by Lee v. Clinton,* 209 F.3d 1025 (7th Cir. 2000), *and Walker v. O'Brien,* 216 F.3d 626 (7th Cir. 2000). The same holds true where, as in Plaintiff's situation, an inmate has brought several distinct lawsuits. A prisoner who files one suit must remit 20% of his monthly income to the Clerk of the Court until his fees have been paid for that case; a prisoner who files a suit and an appeal (or a second suit) must remit 40%; and so on. *Newlin*, 123 F.3d at 436. "Five suits or appeals mean that the prisoner's entire monthly income must be turned over to the court until the fees have been paid." *Id.*

Based on the information Plaintiff provided about his litigation history, he already had five pending cases before he filed the instant case. He should have been assessed payments of 20% of his

monthly income *for each case*, in order to comply with the directive in *Newlin*.  Moreover, he has filed yet another action in this Court for which he owes a filing fee, *Bentz v. Hughs*, Case No. 13-cv-1280-MJR. This brings his total to seven pending lawsuits.

The Menard Trust Fund Officer has been ordered to deduct the initial partial filing fee of $15.91 for this case from Plaintiff's account (Doc. 8), and this payment should be made without delay.  Collection of the remaining monthly payments toward the filing fee for this case (20% of Plaintiff's income pursuant to 28 U.S.C. § 1915(b)(2)) must necessarily be deferred until he has paid off the filing fee for one of his five earlier-filed cases.

Because the Menard Trust Fund Officer has not overpaid Plaintiff's court fees, but in fact has collected less from his account than what he should have been assessed, Plaintiff's motion for contempt of court order (Doc. 9) is **DENIED**.

The Clerk is **DIRECTED** to mail a copy of this order to the Trust Fund Officer at Menard Correctional Center.

**Disposition**

**COUNTS 6 and 7** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  Defendants **COWAN** and **JANE DOE #1** are **DISMISSED** from this action with prejudice.

The Clerk of Court shall prepare for Defendants **ATCHINSON** and **HOWELL**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that

Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for

disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 30, 2013**

                                       *s/ J. Phil Gilbert*
                                       United States District Judge